58 CCPA
**Application of Lucien Victor GEWISS.**
**Patent Appeal No. 8369.**

United States Court of Customs and Patent Appeals.

Jan. 7, 1971.

Donald R. Dunner, Lane, Aitken, Dunner & Ziems, Washington, D. C., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of fifteen claims, i.e., claims 85–91, 93–95, 101–103, 111 and 112, in appellant's application serial No. 514,171, filed June 9, 1955, for "Method and Means for Producing a Novel Material and Novel Material Obtained Therethrough." By letter dated November 3, 1970; appellant requested that the appeal as to method claim 111

be dismissed. Apparently appellant's application includes twenty-four other claims standing allowed but not included in the transcript of record. We conclude that the decision of the board must be affirmed.

Appellant's application discloses a sheet material and methods for producing the same. The sheet material is corrugated in the sense that it has folds or furrows forming alternate ridges and recesses. The specification describes the material as follows:

> My improved material may be defined in its most general form as a solid having substantially no thickness, comprised between enclosing surfaces tangent to its outer surfaces along ridge lines broken at different points when changing direction, the ridge lines on a same surface being connected with the adjacent ridge lines on the same surface when such adjacent ridge lines are present and with the immediately following or preceding ridge lines on the other surface when such adjacent ridge lines are not present on the same surface, through flanks constituted by elementary ruled surfaces of any type having a single curvature, the sum of the angles formed by the sides of said elementary surfaces leading to any points of each of the ridge lines being always equal to 360°.

The solid structure corresponding to the above definition is generally provided with a plurality of series of more or less uniform zigzag grooves, more or less similar to V-shaped lines or chevrons facing alternate directions. For this reason, I will designate them hereinafter by the expression "chevron structures".

My invention covers also all the chevron structures of any general shape and thickness of which at least one surface has a configuration identical with that of one of the solids executed in accordance with the above definition and it also covers any structure derived directly therefrom when the identity in shape is obvious in a general manner with slight differences in detail for reasons which will appear hereinafter.

Claims 85–91, 101–103 and 112 were rejected under 35 U.S.C. § 102 and claims 93–95 were rejected under 35 U.S.C. § 103. Appellant has conceded that claim 85 is representative of the first group, and that claim 93 is representative of the second group, and that the claims in each group stand or fall together.

Claim 85, separated into clauses, reads as follows:

> A sheet of material having
>
> a succession of alternate protrusions and recesses,
>
> the walls of each such protrusion and recess being composed exclusively of elementary surfaces joining each other in an undulatory manner at the ridges of said protrusions and recesses along a single line having a plurality of points at which it changes direction to form a plurality of undulations and at each of which points border lines of at least four of said elementary surfaces converge,
>
> said surfaces being ruled in a direction extending from one ridge line to another,
>
> the sum of the angles formed on said surfaces between said border lines at each of said points being equal to 360°.

The specification states that each of the elementary surfaces between the ridge lines may be developed on a plane since it is constituted exclusively by ruled figures having three or four sides, which are flat or incurved, are positioned endwise and are separated from one another by ridge lines which may be straightened. The specification describes the structures as chevron structures, using the term *chevron* to denote a material having ridge lines and V-shaped recesses. The shapes of the elementary ruled surfaces are disclosed as *parallelograms, trapeziums, triangles and the like.* A parallelogram is a four-sided plane figure having opposite

sides parallel and includes a square, a rectangle (oblong), a rhombus, or a rhomboid. A trapezium is a four-sided plane figure but having no sides parallel. A triangle is a three-sided plane figure. There is no disclosure that the size of the V-shaped recesses is important. The application drawings show a chevron structure in Fig. 3 which may be developed on a plane as shown in Fig. 4. The elementary surfaces of this embodiment are rhomboids.

Fig. 4.

Fig. 5.

Fig. 3

Fig. 4

Fig. 1.

Other application drawings illustrate chevron structures in which the elementary surfaces are triangles or in which the ridges are curved. The term *undulating* as used in the specification and the claims on appeal is generic to zigzag ridges formed either of rectilinear portions or of curved or sinuous portions. Appellant asserts in his brief that claim 85 is generic to broken-line chevroned structures as illustrated, *e.g.,* in Figs. 3 and 4 and also to the sinuous chevroned structures illustrated in other figures.

The board affirmed the examiner's rejection of claim 85 and the other claims in the first group as being anticipated by the Hubbard patent.[1] The Hubbard patent discloses machinery packing of a type adapted for use in the packing of piston rods and the like. The board relied specifically on the structure illustrated in Figs. 5 and 10 of the Hubbard patent drawings. Fig. 5 is a perspective view of the strip of material illustrated in perspective in Fig. 4 after the material has been further crimped or bent to zigzag form in longitudinal section. The Fig. 5 material may have the elements closed upon themselves to form the solid packing member illustrated in Figs. 1 or 10. Figs. 4, 5 and 1 are reproduced below.

The Hubbard patent discloses starting with a flat sheet or strip of metal, such as lead or Babbitt metal, first bending to the form shown in Fig. 4, then bending or crimping each of the longitudinal surfaces 22 of Fig. 4 to form the structure shown in Fig. 5. The structure shown in Hubbard Fig. 5 is clearly an open chevron structure. The Fig. 5 structure formed by further bending or crimping the material of Fig. 4 provides crests 23 and hollows 24 forming zigzag ridge lines and V-shaped recesses. The shape of each elementary surface is shown in Fig. 5 as a rectangular parallelogram. Hubbard teaches that the rectilinear packing material of Fig. 1 may be bent into circular packing because of the zigzag form, whereupon each "zigzag element" will be slightly closed up at the inner end and slightly opened at the outer end, without setting up any abnormal strains.

Claim 85, because of its breadth, reads on the structure disclosed by Hubbard. Applying the terminology of claim 85,

1.  U. S. Patent 1,847,216, issued March 1, 1932.

Hubbard discloses in Figs. 1 and 5 a sheet of material having a succession of alternate protrusions and recesses indicated as crests 23 and hollows 24. The walls of each such protrusion and recess are composed exclusively of elementary surfaces, small elements designated 22 in Fig. 5, joining each other in an undulatory zigzag manner at the ridges of said protrusions 23 and recesses 24 along a single line having a plurality of points at which the ridge line changes direction to form a plurality of undulations and at each of which points border lines of at least four of said elementary surfaces converge. The surfaces are ruled surfaces, being ruled in a direction extending from one ridge line to another. The sum of the angles formed by the Hubbard surfaces between border lines of the surfaces at each of the points where the ridge line changes direction must be equal to 360°, because the crimped sheet material is made from a plane sheet. The Hubbard Fig. 5 material is disclosed as formed from a flat sheet of material illustrated in Fig. 3. We conclude that appealed claim 85 is clearly met by the disclosure of the Hubbard patent.

Appellant asserts that even if the structure of Hubbard's Fig. 5 meets claim 85, Hubbard fails as a reference because it contains no operative disclosure of a method for making such a structure. In support of this contention, appellant points out that following Hubbard's teaching does not result in a structure at all similar to the sharply acute and obtuse angled rhomboid structure of appellant's exhibit F. We agree that exhibit F cannot be made by Hubbard's teaching, but that teaching does result in a structure which meets every term of claim 85.

Appellant further contends in his brief that a chevroned structure cannot be formed of rectangular elements, but appellant clearly teaches in his specification that the elements may be parallelograms, a broad term including rectangular shapes. Claim 85 does not exclude rectangular parallelogram shapes. Sheet material which is folded, crimped and opened, as disclosed in Hubbard's specification with reference to his Fig. 5, is a structure in which the elementary surfaces are rectangular. This structure meets the terms of claim 85, which does not require any particular degree of opening between folds. Appellant's contention that the Hubbard Fig. 5 structure cannot be the developable structure of the claims on appeal is unsound, since the Hubbard patent clearly discloses that the Fig. 5 structure is made by bending and crimping the flat sheet illustrated in Fig. 3. Gewiss physical exhibits E, F, G, H, and I have been considered but are not found to support appellant's contention.

The Peters and Candee affidavits have also been considered. The Peters affidavit does not relate to the Hubbard patent. The Candee affidavit relates to Gewiss exhibit H, to the Hubbard patent and to the shape of and the bending action of roller teeth. Candee states that exhibit H contains surface areas bounded by four straight lines *not* at right angles, i.e., at acute and obtuse angles, but with opposite sides parallel. Such areas are a specific form of parallelogram often termed a rhomboid. The affidavit does not indicate that claim 85 is restricted to the rhomboid, or nonrectangular form of parallelogram in defining the elementary surfaces.

Claim 93 is dependent on claim 85 and adds a recital that the ridge lines along which the elementary surfaces join each other are non-rectilinear undulated lines all of whose points are points at which the lines change direction. This claim is limited to structures in which the ridge lines are sinuous rather than linear. We conclude that it would have been obvious in view of the curved ridge lines shown in Fig. 1 of the Hubbard patent to substitute non-rectilinear undulated ridge lines for the linear ridge lines shown in Fig. 5 of the Hubbard patent. One skilled in the art would have no difficulty in making such substitution and no special results would follow.

We find that the board was correct in sustaining the examiner's rejection of representative claims 85 and 93. The motion to dismiss as to claim 111 is granted and the decision of the board is affirmed.

Affirmed.